**333. CRIMINAL LAW.**
State v. Axe, OS. 6 Abs. 326.
Moore v. State, OS. 6 Abs. 326.
See 1077. Self Defense. Thurman v. State, OA. 6 Abs. 317.

**384. DEMURRAGE.**
Hils Co. v. Louis. & Nash. Rd. Co., OA. 6 Abs. 320.

**396. DIRECTED VERDICTS.**
Lockhart v. Soul, Rec., OA. 6 Abs. 318.
Youngstown & Suburban Ry. Co. v. Faulk, OS. 6 Abs. 327.
See 333. Criminal Law. State v. Axe, OS. 6 Abs. 326.

**413. DIVORCE AND ALIMONY.**
Machransky v. Machransky, OA. 6 Abs. 315.

**414. DOGS.**
See 193. Burglary. Carleton v. State, OA. 6 Abs. 319.

**480. EVIDENCE.**
See 631. Industrial Commission. Tyler Co. v. Rebic, OA. 6 Abs. 321.
See 225. Charge of Court. Sullivan v. Cassidy, OS. 6 Abs. 327.
Rehklau et, v. Bourne, OS. 6 Abs. 326.
See 1041. Reversals. Maxwell Motor Corp. v. Winter, OS. 6 Abs. 326.
See 1283. Workmen's Compensation. Tyler Co. v. Rebic, OS. 6 Abs. 327.

**629. INDICTMENTS.**
See 193. Burglary. Carleton v. State, OA. 6 Abs. 319.

**631. INDUSTRIAL COMMISSION.**
Tyler Co. v. Rebic, OA. 6 Abs. 321.

**661. INTOXICATING LIQUOR.**
McComas v. State, OA. 6 Abs. 324.

**681. JURISDICTION.**
See 1002. Receivers. Lockhart v. Soul, Rec., OA. 6 Abs. 318.

**705. LARCENY.**
See 193. Burglary. Carleton v. State, OA. 6 Abs. 319.

**725. LIMITATIONS.**
See 1283. Workmen's Compensation. Maxwell Motor Corp. v. Winter, OS. 6 Abs. 326.

**755. MECHANICS' LIENS.**
Cincinnati Quarries Co. v. Hess, Aud. et OA. 6 Abs. 319.

**798. MUNICIPAL COURT.**
See 1002. Receivers. Lockhart v. Soul, Rec. OA. 6 Abs. 318.

**799. MUNICIPALITIES.**
Kellogg v. Sherrill, OA. 6 Abs. 322.

**829. NEGLIGENCE.**
See 480. Evidence. Rehklau et, v. Bourne, OS. 6 Abs. 326.
See 396. Directed Verdicts. Youngst. & Suburban Ry. Co. v. Faulk, OS. 6 Abs. 327.

**851. NOTICE AND KNOWLEDGE.**
Addison, Tee v. Cit. Tr. & Sav. Bk. et OA. 6 Abs. 322.

**923. PLEADINGS.**
See 396. Directed Verdicts. Lockhart v. Soul, Rec. OA. 6 Abs. 318.

**936. POSSESSION.**
McComas v. State, OA. 6 Abs. 324.

**941. PRACTICE AND PROCEDURE.**
Thurman v. State, OA. Abs. 317.

**991. RAILROADS.**
See 384. Demurrage. Hils Co. v. Louis. & Nash. Rd. Co., OA. 6 Abs. 320.

**997. REAL ESTATE.**
See 45. Adverse Possession. Rosenblum v. Wilkes et, OA. 6 Abs. 323.

**1002. RECEIVERS.**
Lockhart v. Soul, Rec. OA. 6 Abs. 318.

(Continued on Page 328)

---

## EPITOMIZED OPINIONS
### Published only in the Abstract

### MAPLE v. WASHINGTON TWP. BD. ED.
Ohio Appeals, 4th Dist., Jackson Co.

Decided Dec. 7, 1927.

First Publication of This Opinion.

#### Syllabus by Editorial Staff.

**1159. TAXES & ASSESSMENTS—1104 Statutes—1065 Schools & School Districts.**

Provisions of 5649-9a and 5649-9b GC., are mandatory with respect to:

1. Certification of resolution to County Auditor at least 60 days prior to election.

2. Manner of calculating average annual levy throughout life of bonds.

3. Giving notice of election by publication in newspaper or posting in conspicuous places.

4. Form of ballot to be used at such election.

Heard on appeal.

Decree for plaintiff.

Willis & Jones, Jackson, for Maple.
Harry B. Reese, Jackson, for Bd. Ed.

#### STATEMENT OF FACTS.

This cause comes into this court on appeal and is an action by a taxpayer of Washington Township Rural School District of Jackson County, Ohio, to restrain the issuance of bonds "for the purpose of purchasing a site and erecting and equipping a fireproof school building" in said district. The case was submitted on the facts stated in the pleadings and some additional matters agreed to by the parties. It appears that the defendant board acted under favor of Section 5649-9a and 5649-9b and the bond issue in question was approved at an election held in November, 1926, by a vote of 99 for the issue out of a total vote of 175. It is stated that the total vote of the sub division is from 275 to 300 votes. It is claimed by the plaintiff, and the evidence establishes his claim, that the provisions of the sections named were not followed in the following particulars:

1. The defendant board did not certify its resolution, providing for the issuance of said bonds, to the county auditor at least 60 days prior to said election but did so certify said resolution 58 days prior thereto.

2. The county auditor did not "calculate the average annual levy, throughout the life of the bonds, which will be required to pay the interest on and retire such bonds, assuming that the amount of the tax list of such subdivision remains the same throughout the life of the bonds as the amount of the list for the current year, and if this is not determined the estimated amount submitted by the auditor to the county budget commission," but did calculate such average on the tax list of the preceding year, to-wit 1925, and certified the amount of said average so calculated to said defendant board.

3. That there is no newspaper of general circulation printed in said subdivision and that the notice of said election was not published once a week for four consecutive weeks in a newspaper of general circulation in the subdivision, nor was the notice of said election posted in two conspicuous places in said subdivision 30 days prior to the election or at any time prior thereto.

That the ballot used at said election had printed thereon two questions for the approval of the voters, namely, the centralization of the schools of said school district and the issuance of bonds in question.

MIDDLETON, J.

"It is apparent from the foregoing facts that if the provisions of the sections aforesaid are mandatory, in respect to the matters complained of, the whole proceedings were invalidated by the failure to observe said sections in the particulars specified and that the issuance of the bonds in question must be restrained. This conclusion seems to be inevitable unless this court, by some judicial interpretation of the above sections, may re-legislate the law and make different provisions in respect to the matters in which there was a failure to observe the law as it now stands. We think that the character of the provisions in question has been conclusively determined by the Supreme Court in the case of Board of Education v. Briggs, Aud. 114 OS. 415. In that case the court had under consideration some of the provisions of Section 5649-9c, which is a part of the act providing for the issuance of bonds and which includes the sections involved here. The court, in referring to the character of the provisions of these various sections, on page 420 of its opinion, said:

"It is to be observed that the language prescribing the official action, to be taken precedent to the question of issuing bonds, is mandatory in character throughout these provisions. * * *"

We are not disposed to quibble about the question of the effect of these observations of the court and their application to the proceedings under consideration here. In at least three particulars, by the undisputed evidence, it is established that the plain and positive provisions of the law were not followed. The resolution was not certified as required, the county auditor did not calculate the levy as required and the notice of the election was not made as required. These violations of the statute law invalidate the entire matter.

We regard the failure to post a notice of the election, as required by law, as particularly vicious. While we are not inclined to hold that the publication in a newspaper would not have been sufficient, if followed by the posting of the proper notice, yet the failure to carry out the latter provision is certainly, in itself, sufficient to invalidate the election. It is argued that sample ballots were mailed to a great many of the voters in the subdivision and that these ballots were marked in a manner to instruct said voters how to vote for the issuance of the bonds and that this was some notice. It certainly was some notice but not the kind required by law. Such ballots doubtless were sent only to those who were thought to be inclined favorably to the propositions to be voted on and afford no substitute for the notice required by the law.

The provisions of Section 5020 GC were considered by the Attorney General in an opinion reported in Vol. 1, 1915, pg. 630, of the opinions of the Attorney General. In that opinion the history of this law is given and it clearly appears that it was intended, when first enacted, to provide for the submission of any question, other than a constitutional amendment, on a ballot separate from that on which appears party tickets. It is further shown, in said opinion, that, in its original enactment, the section employed the plural form in the provision that "such questions shall be printed on a separate ballot." When this section was carried into the General Code the plural form was dropped and it now appears in the singular. We are satisfied with the interpretation of this statute, as given by the Attorney General in the opinion cited, and the fourth complaint is overruled.

Some other matters were referred to, in the oral argument, which are not mentioned in the briefs. In view of our conclusions on the matters which we have discussed, we regard them as immaterial.

The injunction will be granted as prayed for and a decree may be entered accordingly."

(Mauck, J., concurs.)